IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

_____

C/A No. 2:18-444-MBS

_____

In re LaDeidra Antoinette Berry

Pennsylvania Higher Education Assistance Agency,

Appellant,

vs.

LaDeidra Antoinette Berry,

Appellee.

_____

Appeal from the United States Bankruptcy Court
For the District of South Carolina

(Hon. John E. Waites)

_____

**ORDER AND OPINION**
_____

This is an appeal of an order awarding attorney's fees with respect to a motion to enforce a bankruptcy plan. A bankruptcy court has the power to hold a litigant in contempt and sanction it for violating the court's orders pursuant to 11 U.S.C. § 105(a), which provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

I. FACTS

Appellee LaDeidra Antoinette Berry ("Debtor") is obligated on student loans held by the United States Department of Education ("DOE") and served by Appellant Pennsylvania Higher Education Assistance Agency ("PHEAA"), d/b/a FedLoan Servicing. Debtor was enrolled in an income-driven repayment ("IDR") plan, which allows a borrow to make payments based on income; and the Public Service Loan Forgiveness ("PSLF") program, which provides for forgiveness of student loan debt for borrowers employed full time in public service positions.

On March 25, 2016, Debtor filed for relief under Chapter 13 of the Bankruptcy Code. Debtor's proposed Chapter 13 plan provided for Debtor to pay PHEAA directly, rather than through the bankruptcy trustee. Debtor had made 43 qualifying pre-petition payments toward the 120 qualifying payments required under the PSLF. Debtor's intent was to maintain her student loan payments under the IDR plan and PSLF program in order to continue to accrue the benefits of that arrangement. The Honorable John E. Waites entered an order confirming the plan on May 9, 2016.

PHEAA placed Debtor's loan in administrative forbearance, as required by applicable law. On June 14, 2016, PHEAA filed a proof of claim on behalf of DOE in the amount of $97,009.87. However, PHEAA discontinued applying Debtor's payments in accordance with the IDR plan and PSLF program. Counsel for Debtor contacted PHEAA, and was informed that Debtor was not eligible for the PSLF program until the bankruptcy was concluded. PHEAA further informed counsel that, because the loan was in administrative forbearance, any payments made were voluntary and not considered to be qualifying payments under the PSLF.

On October 3, 2016, Debtor filed an amended Chapter 13 plan that provided, in relevant part:

*F. Student Loan Claims: As indicated on Schedule J, the Debtor will pay this creditor directly; this creditor will not share in the pro rata distribution from the Trustee: FedLoan Servicing* [PHEAA]*. If this claim is filed by any other entity or account number, Debtor will be responsible to notify the Trustee or Trustee may make disbursements on the claim pursuant to IV.E. above.*

*Debtor agrees that if she signs a certification of plan completion, she will be certifying that all contractual payments that come due to this creditor have been made through the date of certification.*

*The debtor is not seeking nor does this Plan provide for any discharge, in whole or in part, of her student loan obligations.*

*The Debtor shall be allowed to seek enrollment, or to maintain any pre-petition enrollment, in any applicable income-driven repayment ("IDR") plan with the U.S. Department of Education and/or other student loan servicers, guarantors, etc. (collectively referred to hereafter as "Ed"), including but not limited to the Public Service Loan Forgiveness program, without disqualification due to her bankruptcy. Any direct payments made by the Debtor to Ed since the filing of her petition shall be applied to any IDR plan in which the Debtor was enrolled pre-petition, including but not limited to the Public Service Loan Forgiveness program.*

*Ed shall not be required to allow enrollment in any IDR unless the Debtor otherwise qualifies for such plan.*

*The Debtor may, if necessary and desired, seek a consolidation of her student loans by separate motion and subject to subsequent court order.*

ECF No. 2-6, 5.

The bankruptcy judge entered an order confirming the amended plan on January 20, 2017. On April 27, 2017, Debtor filed a motion to enforce. Debtor asserted that she had continued making payments directly to PHEAA, but that no post-petition payments had been applied to the PSLF program. Debtor argued that PHEAA's forced suspension of her participation in the PSLF program was in violation of the amended plan and constituted discrimination in violation of 11 U.S.C. §

3

525(c)(1).[1] ECF No. 2-8. The parties resolved the matter, which resolution was memorialized in a consent order filed by the bankruptcy judge on August 29, 2017. The consent order provided that all post-petition student loan payments made by Debtor would be applied to her IDR plan and PSLF program and that her loan balance would be recalculated. The order further provided that Debtor had not waived her right to attorney's fees. The consent order was signed by counsel for Debtor, DOE, and PHEAA. ECF No. 2-15.

On September 28, 2017, Debtor moved for attorney's fees against DOE pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d); and against PHEAA under 11 U.S.C. § 105. With respect to PHEAA, Debtor asserted that its pre-litigation and post-litigation conduct violated the bankruptcy judge's order confirming the Debtor's Chapter 13 plan. Debtor argued that the bankruptcy judge possessed power under § 105 to sanction where it is necessary to prevent abuse of the judicial system. ECF No. 2-16, 1-4.

The bankruptcy judge held a hearing on October 26, 2017, at which he was informed that Debtor had incurred attorney's fees of approximately $12,574.00, not including fees for time expended on the hearing. Tr. of Hearing, ECF No. 8-3, 6. The bankruptcy judge further was

---

[1] Title 11, United States Code, Section 525(c)(1) provides:

> (c)(1) A governmental unit that operates a student grant or loan program and a person engaged in a business that includes the making of loans guaranteed or insured under a student loan program may not deny a student grant, loan, loan guarantee, or loan insurance to a person that is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, or another person with whom the debtor or bankrupt has been associated, because the debtor or bankrupt is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of a case under this title or during the pendency of the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

informed that DOE had settled with Debtor for $6,000.00, and that she sought the balance of attorney's fees from PHEAA. Id. at 6-9.

Initially, PHEAA asserted that the confirmed plan was contrary to law, that being the requirement that student loans in bankruptcy must be placed in forbearance. Tr. of Hearing, ECF No. 8-2, 92; see 34 C.F.R § 682.402(f)(2). Relying on United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260 (2010), PHEAA argued that the confirmation order was void, so that PHEAA was not required to conform to the terms of the Chapter 13 plan or confirmation order.[2] Id. PHEAA stated that it had no record of having received the amended plan, and that, in any event, PHEAA had received no guidance from DOE as to applying income-based repayment plan ("IBR")[3] payments to a student loan in forbearance. Id. at 94-95.

At the hearing, PHEAA called Katelynn Marie Bias, manager of the bankruptcy and disability document processing unit at PHEAA, to testify. ECF No. 8-3, 11. Ms. Bias testified that the

---

[2] In Espinosa, a bankruptcy court confirmed a Chapter 13 plan in which the debtor proposed to repay only the principal of his student loan and to discharge accrued interest. Under 11 U.S.C. §§ 523(a)(8) and 1328, a discharge of student loan debt requires a finding that failure to discharge would result in "undue hardship" to the debtor. Bankruptcy procedural rules require the bankruptcy court to hold an adversary proceeding to make an undue hardship determination. Such a hearing was not held, and the creditor moved under Fed. R. Civ. P. 60(b)(4) for the bankruptcy court to rule that is confirmation order was void because the creditor did not receive adequate notice of the debtor's proposed discharge of his student loan interest. On appeal, the Supreme Court determined that Rule 60(b)(4) was not the proper vehicle to challenge the confirmation order because the order was not "premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." Espinosa, 559 U.S. at 271-72. Significantly, the Court observed that the bankruptcy court's "failure to find undue hardship before confirming Espinosa's plan was legal error. . . . But the order remains enforceable and binding on [the creditor] because [the creditor] had notice of the error and failed to object or timely appeal." Id. at 1380.

[3] The bankruptcy judge observed that the parties used the terms "IBR" and "IDR" interchangeably. According to The bankruptcy judge, an IBR plan is a type of IDR plan. Order, ECF No. 2-19, 2. PHEAA informs the court that Debtor was enrolled in an IDR. Brief of Appellant, ECF No. 8, 12 n.6.

contract and Common Manual[4] between DOE and PHEAA required PHEAA, as appropriate, to place loans into bankruptcy status, prepare the proof of claim, and assist in defending the loan against a bankruptcy discharge. Id. at 15. Ms. Bias testified that payments received when a loan is in bankruptcy status are applied to interest and principal. Id. at 20. Ms. Bias testified that DOE had given no directive with regard to income-driven repayment, income based repayment, or public service loan forgiveness. Id. at 22. According to Ms. Bias, PHEAA has no authority to appear in court on behalf of DOE, to file an objection to a bankruptcy plan on behalf of DOE, or to retain lawyers and appear in court to make arguments with regard to a bankruptcy plan. Id. at 25. Ms. Bias testified that her office had received the initial Chapter 13 plan, but had never received the amended plan. Ms. Bias also testified that, had her office received the amended Chapter 13 plan, someone would have reached out to DOE for guidance as to how to handle Debtor's request for the IBR plan and PSLF program. Id. at 32.

Counsel for Debtor argued that Debtor repeatedly had contacted PHEAA in an attempt to have her student loans qualified for the IBR plan and PSLF program, but repeatedly was told by PHEAA via both telephone and correspondence that any payments made could not be applied toward these programs because she was in bankruptcy. Id. at 45. Counsel stated that it had taken a great deal of effort to obtain the August 29, 2017 consent order. Counsel also informed the court that PHEAA had raised for the first time in the hearing that it had never received the amended Chapter 13 plan. Id. at 46.

Counsel for PHEAA asserted that the court should take into consideration the fact that the

---

[4] The Common Manual contains complete instructions and guidelines for handling DOE student loans. ECF No. 8-3, 24, 62.

consent order constituted the first time PHEAA had administered a student loan in administrative forbearance in this manner, and that there were no provisions in the Common Manual to address Debtor's situation. Counsel argued that imposition of attorney's fees under 11 U.S.C. § 105 required a finding of gross negligence, misconduct, or bad faith, and that the facts did not support such a finding. Id. at 50.

    The bankruptcy judge issued his order on February 2, 2018. The bankruptcy judge noted that, under 11 U.S.C. § 105(a), the bankruptcy court has authority to award attorney's fees when a party violates the terms of a Chapter 13 plan and the court's confirmation order. Order, ECF No. 2-19, 9. The bankruptcy judge found that the Chapter 13 plan identified FedLoan Servicing (PHEAA) as the creditor on Debtor's student loan. Id. at 11. The bankruptcy judge also found that the Chapter 13 plan provided for Debtor to maintain her enrollment in the IDR plan and PSLF program and also provided clear instruction regarding how her loan payments should be applied. The bankruptcy judge found that the amended plan was properly served on PHEAA and no party objected to confirmation. The bankruptcy judge rejected PHEAA's interpretation of Espinosa, and held that Espinosa stands for the proposition that a plan confirmed after proper notice to the creditor and no objections being filed, remains binding on the parties, even if the plan contains a legal error. Id. at 12, n.18. Thus, the bankruptcy judge determined that PHEAA was bound to the terms of the Chapter 13 plan pursuant to 11 U.S.C. § 1327 and according to the holding in Espinosa. The bankruptcy judge concluded that PHEAA was in violation and contempt of his confirmation order of the amended plan, which required Debtor to file a motion to enforce. According to the bankruptcy judge, the fees and costs associated with the motion to enforce would not have been incurred had PHEAA complied with the amended plan and confirmation order. Id. at 12.

7

Addressing PHEAA's defenses, the bankruptcy judge first concluded that, contrary to its assertions, PHEAA was not limited to placing the student loan into bankruptcy status by its contract with DOE. The bankruptcy judge determined that PHEAA had sufficient authority to comply with the requirements of the amended plan and confirmation order, or to ensure that DOE provided it with the necessary authority. Id. at 14. The bankruptcy judge further observed that PHEAA could have objected if it felt unable to comply with the Chapter 13 plan, or it could have reported the plan's provisions to DOE for action. The bankruptcy judge opined that accepting PHEAA's arguments "would allow it and other similarly situated creditors or parties-in-interest to escape the consequences of a duly noticed confirmed plan and § 1327 by simply limiting its or its agents' responsibility. As a matter of statutory construction and public policy, such a defense cannot be accepted." Id. at 15.

Second, the bankruptcy judge determined that bad faith is not a requirement for the court to take action pursuant to § 105(a). Further, the bankruptcy judge found that direct payments made pursuant to a confirmed plan are part of the bankruptcy proceedings, and that federal regulations do not prohibit the acceptance and application of payments pursuant to the specific terms of a confirmed Chapter 13 plan. Id. at 16. Thus, the bankruptcy judge determined that it was necessary and appropriate for him to award Debtor's attorney's fees so as to enforce and implement his orders and prevent an abuse of process. Id. at 17.

The bankruptcy judge recited that Debtor's counsel had submitted time records indicating attorney's fees and costs in the amount of $22,317.30. The bankruptcy judge found the attorney's fee award to be reasonable under the factors set forth in Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978). The bankruptcy judge reduced the attorney's fee amount by the DOE payment

8

of $6,000.00, and imposed attorney's fees and costs against PHEAA in the amount of $16,317.30. ECF No. 2-19, 18-19.

PHEAA filed a notice of appeal on February 16, 2018. In its brief filed on June 15, 2018, PHEAA identified the following issues on appeal:

1) Whether the Bankruptcy Court's finding that PHEAA had the corporate authority to unilaterally modify the treatment and administration of the Berry Obligations, such that said administration would conform to the Debtor's Second Amended Plan, was clearly erroneous given the record before the Court, including the testimony given at the hearing that the Bankruptcy Court held on October 26, 2017 (the "Hearing") and the other evidence and pleadings in the record (collectively, the "Record")?

2) Whether the Bankruptcy Court's implicit finding that PHEAA's conduct with regard to the Berry Obligations was clearly erroneous given the evidence in the Record?

3) Whether the Bankruptcy Court abused its discretion by imposing sanctions on PHEAA in the Sanctions Order given the evidence in the Record?

4) Whether the Bankruptcy Court abused its discretion by failing to apportion its award of Berry's fees between DOE and PHEAA when Berry incurred the majority of her fees and expenses subsequent to, and as a direct and proximate result of, DOE filing its Objection to Berry's Motion to Enforce?

Brief of Appellant, ECF No. 8, 2.

## II. STANDARD OF REVIEW

A district court "sits as an appellate tribunal in bankruptcy." In re Birmingham, 846 F.3d 88, 92 (4th Cir. 2017). Findings of fact by the bankruptcy court in proceedings within its full jurisdiction are reviewable only for clear error and legal questions are subject to de novo review. In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992) (citing Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 84 (3d Cir. 1988); In re Crouthamel Potato Chip Co., 786 F.2d 141, 144 (3d Cir. 1986)).

9

Decisions committed to the discretion of the bankruptcy court, such as a sanctions order, are reviewed for abuse of discretion. See In re Jemsek Clinic, P.A., 850 F.3d 150, 156 (4th Cir. 2017) (citing McGahren v. First Citizens Bank & Tr. Co., 111 F.3d 1159, 1169 (4th Cir. 1997)). A court abuses its discretion when its conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding. Id. (quoting Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999)). Even if the bankruptcy court applies the correct legal principles to adequately supported facts, the discretion of the bankruptcy is not subject to automatic affirmance. See Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999) (citing Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 506 (4th Cir. 1977) (discussing review of district court decisions)). The district court is obligated to review the record and reasons offered by the bankruptcy court and to reverse if the "'court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" See id. (quoting Wilson, 561 F.2d at 506) (discussing review of district court decisions)).

### III. DISCUSSION

A. Whether PHEAA Possessed Authority to Implement the Amended Plan

PHEAA asserts that the bankruptcy judge erred in rejecting its limited authority defense. PHEAA argues that it lacked authority under the Common Manual and its contract with DOE to object to the amended Chapter 13 plan or implement its terms. PHEAA contends that PHEAA's only option was to place Debtor's student loans into administrative forbearance, file a proof of claim, and provide additional support to defend against a discharge. ECF No. 8, 19; see ECF No. 2-32, 51-52. PHEAA asserts that it was up to DOE to review Debtor's Chapter 13 plan for issues arising out of the IDR plan and PSLF program and to file any objections. According to PHEAA, nothing in the

Common Manual or contract with DOE provides PHEAA with authority to unilaterally remove Debtor's student loans from administrative forbearance and apply her post-petition payments in accordance with the pre-petition IDR plan and PSLF program.

As recited above, the bankruptcy judge noted that PHEAA was designated and acted as the authorized representative of DOE for purposes of servicing Debtor's student loan, communicating with Debtor, and managing and applying the student loan payments. The bankruptcy judge observed that, even if PHEAA did not have sufficient authority to comply with the confirmation order, it could have requested guidance from DOE after Debtor and her counsel queried PHEAA about its failure to comply with the confirmation order.

The court cannot say that the bankruptcy judge's determinations that PHEAA possessed authority to apply Debtor's payments to her IDR plan and PSLF program, or to raise the issue to DOE, were guided by erroneous legal principles or rested upon a clearly erroneous factual finding. Certainly PHEAA was aware of its obligations to conform to the requirements of a court order. As Debtor points out, the contract between PHEAA and DOE provides that PHEAA was "responsible for maintaining a full understanding of all federal and state laws and regulations and FSA requirements and ensuring that all aspects of the service continue to remain in compliance as changes occur." ECF No. 2-32, 23. The court notes that PHEAA was obligated to "respond and resolve customer complaints, and create and execute a plan to escalate complaints" to DOE. To the extent it perceived it was limited by its contract and the Common Manual to placing Debtor's student loan in administrative forbearance for the duration of the bankruptcy, in derogation of the confirmation order, PHEAA could have communicated its concerns to DOE. The court is aware of no provision in the contract or Common Manual that prohibits PHEAA from taking any steps beyond placing

11

loans, "where the borrower has applied for bankruptcy, into a bankruptcy status, prepar[ing[ a Proof-of-Claim and provid[ing] any additional support needed to defend the loan against bankruptcy discharge." Id. at 51-52. To the contrary, PHEAA was obligated to have a mechanism in place to elevate complaints to DOE, and could have done so.

B.     Whether a 11 U.S.C. § 105 Sanction Requires a Finding of Bad Faith

PHEAA asserts that the bankruptcy judge erred in concluding PHEAA's conduct was willful so as to support a sanction under § 105. As an initial matter, the bankruptcy judge rejected PHEAA's position that bad faith is a requirement for a bankruptcy judge to take action under § 105. The bankruptcy judge observed that § 105 "provides a sweeping grant of authority to 'issue any order, process or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code, including ensuring that parties comply with the terms of a confirmed chapter 13 plan under § 1327(a), and is not limited to bad faith conduct." ECF No. 2-19, 16. The Court of Appeals for the Fourth Circuit has held that Congress under § 105(a) granted bankruptcy courts the power to enforce their lawful orders through civil contempt. "Determining if a party has committed civil contempt involves essentially only consideration of whether the party knew about a lawful order and whether he complied with it." In re Walters, 868 F.2d 665, 670 (4th Cir. 1989). Other courts have held the same. See, e.g., In re Eppolito, 583 B.R. 822 (S.D.N.Y. 2018); In re Rhodes, 563 B.R. 380 (M.D. Fla. 2017); In re Sann, Case No. 14-61370-7, 2016 WL 1375022, *3 (D. Montana, April 5, 2016); In re Emergency Room Mobile Servs., L.L.C., 529 B.R. 676 (N.D. Tex. 2015).[5]

To establish civil contempt, the following elements must be established by clear and

---

[5] The bankruptcy judge correctly noted that a finding of bad faith is required when a bankruptcy court utilizes its inherent power rather than § 105(a). ECF No. 2-19, 15 n.25.

12

convincing evidence:

> (1) The existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

Ashcraft v. Conoco Inc., 218 F.3d 288, 301 (4th Cir.2000) (quoting Colonial Williamsburg Found. v. The Kittinger Co., 792 F. Supp. 1397, 1405–6 (E.D. Va.1992)).

In this case, the bankruptcy judge issued a confirmation order on the Chapter 13 plan, as amended; PHEAA was aware of the confirmation order; PHEAA failed to abide by the confirmation order, and Debtor was harmed as a result. The question becomes, then, whether PHEAA may defend on the basis of inability to comply with the bankruptcy judge's order. See In re Minh Vu Hoang, Nos. 05-21078-TJC, 05027378-TJC, 2014 WL 1320322, *4 (D. Md. March 28, 2014) (quoting Elec. Workers Pension Trust Fund v. Gary's Elec. Serv. Co., 340 F.3d 373, 379 (6th Cir. 2003)). PHEAA must show more than "'a mere assertion of inability and establish that [it] has made in good faith all reasonable efforts' to comply." Id. (quoting In re Lawrence, 251 B.R. 630, 651 (S.D. Fla. 2000)).

PHEAA reasserts its argument that it did not have authority to unilaterally implement the IDR plan and PSLF program provisions of the Chapter 13 amended plan. Assuming for purposes of appeal that PHEAA is correct, the bankruptcy judge also concluded that PHEAA could have sought guidance from DOE, but failed to do so. The court cannot say the bankruptcy judge's determination was guided by erroneous legal principles or rested upon a clearly erroneous factual finding.[6]

---

[6] PHEAA argues in its reply brief that it was unable to elevate the amended plan to DOE because it did not receive a copy. The bankruptcy judge rejected this argument. ECF No. 2-19, 11 n.17. In any event, PHEAA obtained knowledge regarding the amended plan through receipt of the

C. Whether the Imposition of Sanctions Was an Abuse of Discretion

PHEAA contends that the bankruptcy judge abused his discretion in imposing sanctions under 11 U.S.C. § 105, again on its position that civil contempt requires a finding of willfulness. PHEAA contends it did not act willfully because the Common Manual and its contract with DOE delineated its scope of authority, such that it (1) could not unilaterally implement the IDR plan and PSLF program provisions of the amended plan; (2) could not file an objection or otherwise make an appearance in Defendant's bankruptcy case; and (3) had no system in place for monitoring and applying unique provisions of bankruptcy plans. Thus, according to PHEAA, there is no evidence in the record to support a finding that the bankruptcy judge "explicitly or implicitly, [determined] that PHEAA *willfully* violated the Order confirming the Second Plan." ECF No. 8, 25.

For the reasons set forth hereinabove, the court concludes the imposition of sanctions under § 105 does not mandate a finding of willfulness or bad faith. The court cannot say the bankruptcy judge's determination was guided by erroneous legal principles or rested upon a clearly erroneous factual finding.

D. Whether the Within Action Should be Distinguished from Prior Decisions Sanctioning Creditors

PHEAA contends the bankruptcy judge erred in attempting "to tow *[sic]* a consistent line on sanctioning creditors that fail to comply with its orders[.]" ECF No. 8, 28. According to PHEAA, the bankruptcy judge's prior decisions involved sanctioning creditors who acted on their own

---

confirmation order. See ECF No. 2-7 (Order Confirming Plan and Resolving Motions and certificate of service filed January 20, 2017). PHEAA also was aware that the bankruptcy judge had confirmed a plan allowing Debtor to make payments directly to PHEAA for her student loans that should be posted according to Debtor's IDR plan and PSLF programs. See. e.g., ECF No. 2-26 (correspondence to PHEAA from Debtor's counsel); ECF No. 2-10, 14-17 (records of conversations between PHEAA and Debtor). Nevertheless, PHEAA did not request guidance from DOE.

volition, by or through employees who were given authority to take the acts in question. PHEAA suggests that the bankruptcy judge "may [have] improperly weigh[ed] the evidence regarding PHEAA's authority as [he] reached the conclusion that it was appropriate to sanction PHEAA." Id. PHEAA argues that, as a servicer that was strictly following its defined contractual duties, the imposition of sanctions is not appropriate.

In In re Final Analysis, Inc., 389 B.R. 449, 462-63 (Bankr. D. Md. 2008), the bankruptcy court summarized its authority under § 105:

> The basic purpose of Section 105(a) is to "enable a court to do whatever is necessary to aid its jurisdiction, i.e., anything arising in or relating to a bankruptcy case." In re DeLorean Motor Co., 991 F.2d 1236, 1242 (6th Cir. 1993) (quoting 2 Collier on Bankruptcy P105.02 at 103–05 (15th ed. 1987)). In Marrama v. Citizens Bank, 549 U.S. 365 [] (2007), the Supreme Court reaffirmed the "broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent the abuse of process' described in § 105[.]" . . . Courts have found that equity powers allow them to "sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." In re Executive Office Centers, Inc., 96 B.R. 642, 650 (Bankr. E.D. La.1988) (quoting Pepper v. Litton, 308 U.S. 295, 307–08 [] (1939)). . . . Section 105(a) grants the Bankruptcy Courts the authority to choose the construction of a remedy. In re Coleman Enterprises, Inc. [266 B.R. 423, 435 (Bankr. D. Minn.2001),] held that
>
>> [Section] 105(a) puts no facial restriction on the structure of relief that the courts can fashion under it, as long as they are furthering a principle identifiable in the applicable substantive law of bankruptcy. Section 105(a) was enacted to promote such enforcement, through means that are tailored [to] the innumerable scenarios of financial distress in bankruptcy cases.

The bankruptcy judge found the unusual circumstances of this case and the failure of PHEAA to make any attempt to comply with the amended plan warranted sanctions. Although PHEAA may not have affirmatively taken action to harm Debtor, its failure to act caused Debtor to incur costs of litigation, both before and after the consent order was executed. The court cannot say the bankruptcy

15

judge's determination was guided by erroneous legal principles or rested upon a clearly erroneous factual finding.

E.  Whether the Sanction Should be Apportioned

Finally, PHEAA contends that the bankruptcy judge erred in failing to apportion damages between it and DOE. According to PHEAA, DOE was the most culpable source of Debtor's difficulties because DOE had not instructed PHEAA to implement the amended plan. PHEAA asserts that a fair adjudication would have allocated no more than $5,368.80 of the fee sanction to PHEAA, which was the amount of attorney's fees incurred by Debtor prior to her filing of the motion to enforce. PHEAA argues that the remaining $13,418.50 should have been allocated to DOE, less the $6,000.00 paid by DOE to Debtor prior to the sanctions hearing.

The bankruptcy judge reviewed Debtor's attorney's time records and observed that the fees included the time counsel spent contacting PHEAA to enforce the plan and confirmation order, through her motion to enforce, negotiations resulting in the consent order, and the hearing on Debtor's motion. The court discerns no reason the time spent by Debtor attempting to convince PHEAA to comply with the amended plan should be excluded from the fee sanction. The court cannot say the bankruptcy judge's determination was guided by erroneous legal principles or rested upon a clearly erroneous factual finding.

## IV. CONCLUSION

For the reasons stated, the court concludes that the bankruptcy judge did not abuse his discretion in imposing sanctions on PHEAA in the amount of $16,317.30. The order of the

16

bankruptcy judge issued February 2, 2018, is **affirmed**.

    **IT IS SO ORDERED**.

                                                /s/ Margaret B. Seymour
                                                Senior United States District Judge

Charleston, South Carolina

March 4, 2019